UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON BURKE-JOHNSON,

       Plaintiff,

v.                                                                                        CIVIL NO. 04-73996
                                                                     HON. LAWRENCE P. ZATKOFF

ANTHONY J. PRINCIPI,
SECRETARY OF THE DEPARTMENT
OF VETERANS AFFAIRS,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 3, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment filed on October 6, 2005. (Defendant filed an amended motion on October 13, 2005.) Plaintiff has responded to Defendant's motion, and Defendant has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process

would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

### A. Facts

Plaintiff is an African-American female who works for the Department of Veterans Affairs ("VA"). She began working for the VA in 1981, as a GS-4 Ward Clerk at the VA Medical Center in Ann Arbor, Michigan. In 1992 she was promoted to a GS-6 Supervisory Medical Clerk. In 1996 Plaintiff was again promoted to a GS-7 Administrative Information Coordinator ("AIC"). There were four other AICs at the Medical Center. Three were Caucasian: Martha Morgan, Nancy Werkema, and Susan Varcie. One, Luisa Cardona, was Mexican.

In 1998 the Medical Center underwent a reorganization. Because of budgetary constraints, VA officials were asked to identify positions that could be eventually be eliminated. Jo Tirone, a Caucasian female, was the Associate Director for Patient Care Services. Tirone identified the AICs as positions that could be eliminated. Between 1998 and 2001, three of the AICs, Werkema, Cardona, and Varcie, were laterally reassigned to other GS-7 positions at the Medical Center. Another AIC, Morgan, received a GS-9 secretary position at a different VA facility.

In the spring of 2001, Plaintiff, Cardona, and another employee applied for a GS-9 Staff Assistant position at the Medical Center. On May 6, 2001, Tirone selected Cardona for the position. Thus, by May 2001 Plaintiff was the only remaining AIC. Pamela McCoy, an African-American female, was Plaintiff's immediate supervisor. Tirone was Plaintiff's second line supervisor.

On May 8, 2001, Plaintiff sent a memorandum to Tirone, asking for clarification of her

responsibilities. Tirone referred Plaintiff's inquiry to McCoy, who responded to Plaintiff. Plaintiff, McCoy, and Tirone subsequently met to discuss Plaintiff's responsibilities. On May 10, 2001 Plaintiff sent Tirone another memorandum asking several questions about the selection process for the GS-9 Staff Assistant position Plaintiff had previously applied for. Tirone offered to meet with Plaintiff to discuss the process, but Plaintiff refused, preferring written answers to her questions. In May 2002, Plaintiff was laterally reassigned to a GS-7 Program Assistant position.

### B.     Procedural History

On April 25, 2001, Plaintiff requested EEO counseling, alleging that she had been denied a promotion on account of her race. On May 29, 2001, EEO Counselor Karen Younger-Burns sent a letter to Plaintiff informing her that she had a right to file a formal complaint within fifteen calendar days from her receipt of the notice. Plaintiff claims that she filed the formal EEO complaint, but she did not retain a copy, and there is no record of the complaint.

Plaintiff again sought counseling on August 2, 2001. After receiving a right-to-sue letter, Plaintiff filed a formal complaint with the VA Office of Resolution Management ("ORM") on September 18, 2001. Plaintiff's complaint alleged the following:

(1)     In May 2001, complainant was not invited to the office party;

(2)     In April 2001, complainant was treated with no respect;

(3)     In April 2001, management attempted to kill complainant's self-esteem;

(4)     In July 2001, complainant was treated like she did not have skills;

(5)     From June 1998 to present, complainant was put on special projects and was not compensated like other employees (monetary, promotion and special contribution awards);

(6)     In July 2001, complainant was denied educational opportunities;

    (7)    In April 2001, there was an open door policy for everyone except complainant;

    (8)    On July 3, 2001, other staff members sabotaged data collected by complainant;

    (9)    In May 2001, complainant was denied a promotion within her service;

    (10)    On May 31, 2001, complainant's supervisor failed to communicate changes and policies to complainant; and,

    (11)    On June 19, 2001, complainant's duties were changed without prior notice.

Def. Exh. 25. The ORM concluded that most of Plaintiff's allegations were untimely, or failed to state a claim for relief. Thus, all claims were dismissed except for the following: "Whether on the basis of reprisal, you were subjected to disparate treatment: 1) When on June 19, 2001, your duties were changed without prior notice; and 2) When on May 31, 2001, your supervisor failed to communicate changes and policies to you." Def. Exh. 23 at 184. After an investigation the complaint was referred to the EEOC for a decision.

On January 29, 2004, the EEOC Judge found that Defendant had not discriminated against Plaintiff. Plaintiff's appeal was denied on July 15, 2004. Plaintiff filed the instant complaint on October 19, 2004, alleging racial discrimination and retaliation. However, in Plaintiff's Response to Defendant's Motion for Summary Judgment, she admits she does not have evidence to support the retaliation claim, and is willing to dismiss it.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to

any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Title VII provides, in pertinent part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms,

5

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff relies upon circumstantial rather than direct evidence of discrimination, the discrimination claim is governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Supreme Court described the burden-shifting framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citations omitted).

To establish a prima facie case in the failure to promote scenario, "a plaintiff must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

In her complaint, Plaintiff alleges that she was denied a promotion over thirty times during the last four years. However, the only specific example she provides is the May 2001 GS-9 Staff Assistant position that was given to Cardona. The Court agrees with Defendant that Plaintiff has provided no evidence to support her assertion that she applied and was qualified for more than thirty promotions, and thus has not established a prima facie case for those claims. Defendant acknowledges that Plaintiff can establish a prima facie case regarding the May 2001 promotion of Cardona to the GS-9 Staff Assistance position.

However, Defendant argues that Plaintiff's case should be dismissed for failure to exhaust administrative remedies. Defendant notes that 29 C.F.R. § 1614.105(a) requires a complainant to file a discrimination complaint within fifteen days after receiving a right-to-sue letter. In the current case, the right-to-sue letter was sent on May 29, 2001. Defendant claims Plaintiff did not file a formal complaint until September 18, 2001.

In response, Plaintiff claims she filed a complaint prior to the one she filed on September 18. During her deposition Plaintiff testified as follows:

> Q. Sharon, you said that you recall filing an EEO complaint regarding the non-selection for the staff assistant position; is that correct?
>
> A. Yes.
>
> Q. Do you actually recall, like remember as you sit here today whether or not you filled out the application – I mean the complaint?
>
> A. I filled it out because I can't find the form. I can find the letter, I can find the other pieces with it, but the actual form that they sent you that you fill out, I can't find that. So, I know I filed it, otherwise I would have it, it would all be attached together.
>
> Q. How is it that you know that you filed it?
>
> A. Because Karen Younger-Burns called me when she first got it, when she received the first copy, she said, I got your information, I'll be in contact with you later and we'll go from there. And I left it alone.

Plaintiff's Exh. B at 169-170. The Court notes that Plaintiff did not specifically state that she remembers sending in a complaint within fifteen days of receiving the right-to-sue letter. However, she did state that Younger-Burns called to acknowledge receipt of the complaint. Plaintiff also testified that when she filed a complaint on September 18, she thought that the new claims would be consolidated into the original complaint. *Id.* at 104. For purposes of summary judgment, the Court will accept Plaintiff's testimony as true, and will address the merits of Plaintiff's claim.

Plaintiff first argues that the burden-shifting approach does not apply in this case, since she has presented direct evidence of discrimination. Plaintiff points to the testimony of Pamela McCoy, Plaintiff's immediate supervisor. McCoy had filed a previous discrimination complaint herself, and testified as follows:

> Q. Okay. In your personal experience has Jo Tirone treated blacks and whites differently from each other?
>
> A. I can only speak to my own situation at that time and that is what the record reflects for that time.
>
> Q. Speak to your own situation at that time with regard to Ms. Tirone, please, on this issue.
>
> A. It's as stated in the complaint.
>
> Q. In you own words right now today looking back, your memory, your honest memory, is Jo Tirone someone who engaged in racial discrimination?
>
> A. At that time, yes.
>
> * * *
>
> Q. Based on your own personal experience, are you inclined to believe the accounts of others who claim to have suffered racial discriminatory treatment, particularly in the failure to promote issue as the Ann Arbor VA facility?
>
> A. My experience in the past and the data that I had and information that I had in the past, yes.
>
> Q. When you would discuss Sharon Burke-Johnson with Jo Tirone, did Jo Tirone ever make statements that you felt were demeaning or hostile or depriving Ms. Burke-Johnson of her dignity outside of her presence?
>
> A. Yes.
>
> Q. Could you describe them, please?
>
> A. I can't remember specifics but from what you've just stated, that was the general outcome of some of the conversations.

Plaintiff's Exh. A at 72-73.

Plaintiff argues that McCoy's statements constitute direct evidence of discrimination. However, Plaintiff has misconstrued the standard for direct evidence. The Sixth Circuit has held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). In *Carter*, the plaintiff, an African-American female, was denied a renewal of her visiting professorship. The plaintiff alleged that the University Vice Provost told her that the Dean was "trying to whitewash the college of education" and "trying to get rid of the black professors." *Id.* at 272. The Vice Provost also allegedly referred to the administration as a "bunch of racists." *Id.* The Court held that the Vice Provost "was not a decision-maker with regard to the renewal of [the plaintiff's] visiting professorship. His statements therefore cannot be considered direct evidence of racial discrimination against [the plaintiff]."

Similarly, the plaintiff in *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427 (6th Cir. 2002), claimed direct evidence of discrimination. The plaintiff produced the testimony of one of his supervisors, who stated it was his opinion that the plaintiff was denied a promotion because of his race. *Id.* at 431. The Court held that while the manager's opinion "may constitute circumstantial evidence of discrimination, even if believed, it does not require the conclusion that unlawful discrimination was a motivating factor in DaimlerChrysler's actions." *Id.* at 433. Thus, it was not direct evidence of discrimination.

Similarly, in the current case Plaintiff has produced the opinion of her supervisor, McCoy. However, Tirone, not McCoy, made the decision to promote Cardona instead of Plaintiff. Thus, McCoy's opinion cannot be considered direct evidence of discrimination. Direct evidence in this

case would be statements by Tirone that indicated her decision was based on discriminatory reasons. Plaintiff has not produced any such statements, thus, she has not provided direct evidence of discrimination.

Plaintiff's reliance on *Weberg v. Franks*, 229 F.3d 514 (6th Cir. 2000), is misplaced. In *Weberg*, the plaintiff, a sergeant with the Michigan Department of Corrections, was suspended following an altercation with a prisoner. The plaintiff brought suit, alleging discrimination. The Sixth Circuit held that the plaintiff had provided direct evidence of discrimination, noting that the Warden had stated in his disciplinary report "[h]ere we have three white employees and one black inmate. The wrong message is thus sent to other inmates in the unit who are watching the incident." *Id.* at 520. The Court also noted that "[the Warden] openly admitted that he would terminate an employee simply because of the 'perceptions of inmates,' and that he had in fact done just that. He further indicated that he felt 'strongly' that plaintiff should be terminated 'simply because she was white and she was in a black housing unit.'" *Id.* at 524.

In the instant case, Plaintiff argues that McCoy's statements demonstrate a discriminatory motive more clearly than the Warden's statements in *Weberg*. However, Plaintiff has overlooked a crucial distinction. In *Weberg*, the statements indicating a discriminatory motive were made by the decision-maker, the Warden. In contrast, Plaintiff here has failed to produce any statements by the decision-maker, Tirone, indicating that her non-selection of Plaintiff was based on discriminatory motives.

Plaintiff could argue that McCoy did testify that Tirone made disparaging comments about Plaintiff. However, McCoy never stated that the comments were related to Plaintiff's race. The fact that an employer does not like a particular employee does not constitute direct evidence of racial

10

discrimination. In fact, Plaintiff herself provided a non-racial explanation for Tirone's alleged animosity.

> Q. Now, the next allegation you make was "attempt to kill self-esteem because I . . . [won't] Gossip about other staff." What are you talking about? You have a date here March of 2001.
>
> A. The VA is like a soap opera, all they do is talk about each other. I'm not a part of any gossip. I'm not a part of any click [sic]. I come to work, I do my job. I don't need to know who is sleeping with whom. I don't need to know who is doing what with whom. All I need to do is know the particulars of my job. If there's some way I can help you, I will help you. If it doesn't pertain – if it's something negative, I don't want to know about it, because it's too much of that out there as is.
>
> Q. If it's something that's not dealing with the VA, you don't necessarily have to know about that either?
>
> A. Exactly.
>
> Q. Okay. So, what does that have to do with your self-esteem?
>
> A. If you're part of the gossip group, then you're invited to everything. The people that Ms. Tirone surrounds herself by are the people that tell her what she needs to know about other staff, all their little idiosyncrasies, all of their little faults, all of their personal business come through something else.

Def. Exh. 5B at 120-21.

It is not the Court's role at the summary judgment stage to weigh competing explanations of Tirone's alleged animosity. However, to substantiate her claim of direct evidence of discrimination, Plaintiff must produce evidence showing that Tirone's alleged hostility had a discriminatory motive. Since she has failed to do so, Plaintiff has not provided direct evidence of discrimination.

In the alternative, Plaintiff argues that she has established a prima facie case of discrimination. Defendant has conceded that Plaintiff has established a prima facie case, and the Court agrees. Plaintiff is a member of a protected class, she applied and was qualified for a

promotion, and an employee who was not a member of the protected class, Cardona, received the promotion.

However, Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's non-selection. Tirone testified that she considered knowledge of the patient care service, organizational skills, interpersonal skills, decision making skills, and computer skills when making her selection. Def. Exh. 6B at 49-51. Tirone testified that Cardona's decision making skills, knowledge of the overall patient service, and interpersonal skills were superior to Plaintiff's. *Id.* at 50. Tirone also testified that Cardona had a broader scope of responsibility in previous assignments than Plaintiff. *Id.* at 52.

Because Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's non-selection, Plaintiff must demonstrate pretext to avoid summary judgment. In her Complaint, Plaintiff states that Cardona had less seniority and computer knowledge. However, as discussed above, Tirone stated that computer knowledge was only one factor in the selection decision. In addition, Plaintiff has produced no evidence that her computer knowledge was superior to Cardona's, and does not mention the argument at all in her Response to Defendant's Motion for Summary Judgment.

Plaintiff also states in her Complaint that she has been turned down for promotions more than thirty times. However, the only specific example she provides is the staff assistant position that was awarded to Cardona. Plaintiff acknowledged that she occasionally did not submit a complete application for a position, or withdrew her application after it had been submitted. Def. Exh. 5B at 140-42. Defendant has also provided a list of eight positions for which Plaintiff applied, but did not meet the minimum qualifications. Def. Exh. 26.

12

In her Response, Plaintiff relies solely on McCoy's statements to demonstrate pretext. Plaintiff is correct in asserting that the opinion of another employee is a factor in determining pretext. In *Carter*, the plaintiff alleged that an employee of the defendant stated that race was a factor in the decision not to renew her employment. The plaintiff also alleged that similarly situated Caucasian visiting professors had their contracts renewed. The Court noted that the employee's alleged statements about race were " made in direct response to [the plaintiff's] inquiries as to why she was not rehired." *Carter*, 349 F.3d at 276. The Court held that the plaintiff had made a showing of pretext sufficient to avoid summary judgment.

Similarly, the plaintiff in *Hopson* submitted an opinion from another employee that he was not promoted because of his race. The plaintiff also offered the testimony of an economist who presented statistics showing that there was an under-representation of African Americans in management of the defendant's company. Plaintiff also offered evidence that he applied for five promotions for which he was qualified, yet was never interviewed for a promotion. The Court noted that the defendant had "failed to specify the manner in which the white employees were better qualified." *Hopson*, 306 F.3d at 436. The Court held that the plaintiff had made a showing of pretext sufficient to avoid summary judgment.

While the opinion of a fellow employee is a significant factor in demonstrating pretext, Plaintiff is incorrect in asserting that circumstance alone automatically precludes a grant of summary judgment. If that were true, any time multiple plaintiffs joined in a discrimination suit against an employer, summary judgment would be precluded. Regardless of the paucity of the plaintiffs' evidence, their combined opinion that the employer had engaged in discrimination would be sufficient to block a motion for summary judgment. This is clearly not the case.

In *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164 (6th Cir. 1996), two plaintiffs brought a Title VII suit against their former employer, a nursing home.  One of the plaintiffs, an African women, alleged that she had been terminated on the basis of racial discrimination.  The other plaintiff, a Caucasian women, alleged that she had been terminated because she frequently complained about the alleged discriminatory treatment of Africans by the nursing home.  The defendant claimed the Caucasian plaintiff was terminated for violating the nursing home's policy, and the African plaintiff was terminated for refusing to accept a work assignment.

The plaintiff alleged that the defendant's reasons were pretextual.  The Court noted that:

> The plaintiffs filed many affidavits with their written responses to the defendants' motions for summary judgment. They referred to some of these affidavits at the district court hearing on the motions and have directed our attention to them on appeal. They argue that the totality of the evidence, when viewed in a light most favorable to them, reveals evidence of unlawful employment practices sufficient to defeat a motion for summary judgment and to require a trial on the merits.

*Id.* at 169.  The Court also noted that "the probative evidence demonstrates some hostility toward the African employees by white employees."  *Id.* at 171.  However, the Court held that

> There are numerous charges of disparate treatment and hostile work environment that are made in general, conclusory terms, but names, times and occasions are missing. In fact, the affidavits are filled with statements of the subjective beliefs of the affiants that [the defendant] was hostile to its African employees and treated them differently from other employees.

*Id.*  The Court granted summary judgment for the defendant, holding that "neither plaintiff met her burden of producing evidence from which a jury could reasonably conclude that the reason given by [the defendant] for her termination was pretextual."  *Id.*

The instant case is much closer to *Wixson* than to *Carter* or *Hopson*.  In *Carter* and *Hopson*, the plaintiffs produced other circumstantial evidence to support the opinion testimony.  In addition, the statements presented in those cases were directly related to the alleged discriminatory treatment

of the plaintiffs. In *Carter*, the Court noted that the statements about racism "were allegedly made in direct response to [the plaintiff's] inquiries as to why she was not rehired." *Carter*, 349 F.3d at 276. Likewise, in *Hopson* the Court noted that another employee "testified that he believed discrimination to be involved clearly [in plaintiff's case.]" *Hopson*, 306 F.3d at 437.

In contrast, Plaintiff in the instant case does not offer any additional evidence of pretext, but relies solely on McCoy's statements. Furthermore, McCoy never directly stated that she thought racism was a factor in the decision to not promote Plaintiff. It is true that McCoy stated she would be inclined to believe allegations of discrimination from employees of the VA. Plaintiff's Exh. A at 73. However, when asked if Tirone engaged in racial discrimination, McCoy responded "I can only speak to my own situation at that time and that is what the record reflects for that time." *Id* at 72. McCoy specifically stated that she could only speak for herself, and thus her statements fall short of a direct claim that Tirone discriminated against Plaintiff.

As in *Wixson*, Plaintiff's arguments consist of subjective beliefs. Plaintiff has produced no evidence that the legitimate, non-discriminatory reasons given by Tirone for her selection of Cardona were pretexutal. Since Plaintiff has failed to carry her burden of demonstrating pretext, her claim fails as a matter of law.

## V.  CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's action is HEREBY DISMISSED with prejudice.

IT IS SO ORDERED.

        s/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated:  January 3, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 3, 2006.

        s/Marie E. Verlinde
        Case Manager
        (810) 984-3290